**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

---

HURRICANE WORK, LLC,                    CIVIL ACTION NO. 24-1756

VERSUS                                  JUDGE ALEXANDER C. VAN HOOK

NAVIGATORS INSURANCE CO.                MAGISTRATE JUDGE HORNSBY

---

**MEMORANDUM RULING**

Pending before the Court is a Motion for Summary Judgment ("Motion") filed by Defendant Navigators Insurance Co. ("Defendant"). Record Document 27. Plaintiff Hurricane Work, LLC ("Plaintiff") filed a Memorandum in Opposition (Record Document 31 and hereinafter "Opposition"), and Defendant filed a Reply (Record Document 32 and hereinafter "Reply"). For the reasons assigned and as set forth herein, Defendant's Motion is **GRANTED**.[1]

**FACTUAL BACKGROUND**

This lawsuit arises from a contract of insurance issued to Plaintiff by Defendant purportedly covering several large pieces of heavy commercial equipment, the location of some of which is now unknown. Plaintiff is a contractor providing services, including debris removal, in Puerto Rico. Record Document 1 at ¶5. Plaintiff generally subcontracts for most or all of such work with other companies that own

---

[1] Also before the Court are: (1) Plaintiff's Motion for Partial Summary Judgment #1 (Record Document 42), Defendant's Opposition thereto (Record Document 49), and Plaintiff's Reply (Record Document 50); (2) Plaintiff's Motion for Partial Summary Judgment #2 (Record Document 45), and Defendant's Opposition thereto (Record Document 58); and (3) Defendant's Motion for Partial Summary Judgment (Record Document 47). Those motions are dismissed as moot.

the appropriate equipment to provide the required services. Record Document 1 at ¶6.

In 2018 Plaintiff contracted with Look's Great Services, Inc. to remove, mulch, and dispose of organic debris left behind by Hurricane Maria, and subcontracted with Grindco, LLC ("Grindco") to actually perform such work. Record Documents 1 at ¶15; 31 at 3; and 31-1 at ¶¶2-4. In conjunction therewith, Plaintiff signed a lease with Isabella Recycling, Inc. ("Isabella") to dispose of the mulched material at Isabella's local site. Record Documents 1 at ¶14; and 31-1 at 29 and at ¶14. The equipment intended to be used in the mulching and disposal process belonged to Grindco. Record Document 1 at ¶16.

Plaintiff then contacted an insurance broker, Querbes & Nelson ("Q&N") in Shreveport, Louisiana to obtain insurance coverage on the equipment owned by Grindco. Record Document 1 at ¶5. Although Grindco was not listed as an additional named insured, its equipment was listed by name and serial number on a property schedule included in the insurance policy. Record Documents 1 at ¶8; and 27-2 at 58-59. Also part of the policy was an IM 7000 rider entitled Contractors' Equipment Coverage. Record Document 27-2 at 18-30. The insurance policy was issued by Defendant, Record Document 27-2, and renewed annually. Record Document 31-1 at ¶13. The policy at issue in this litigation was in effect from February 16, 2023, through February 16, 2024. Record Document 29 at 4-5.

After subcontracting with Grindco and executing the Isabella lease, Plaintiff arranged for the subject equipment to be moved to and kept at the Isabella property,

where it would be used in 2019 to process the debris. Record Document 1 at ¶16. For reasons not clearly delineated in the record but at least in part due to the COVID pandemic and several severe weather events, the work to be performed in Puerto Rico by Plaintiff and Grindco was postponed. Record Document 1 at ¶18. Plaintiff arranged for the equipment to be stored at the Isabella site pending resumption of work under the contract. Record Documents 1 at ¶18; and 31-1 at ¶12.

In early February 2024, over five years later, Grindco was informed by a local representative, and Grindco then informed Plaintiff that several pieces of equipment were missing from the Isabella site. Record Document 1 at ¶19. Plaintiff notified Q&N of the missing equipment, and on February 14, 2024, Q&N notified Defendant. Record Document 1 at ¶¶19-20. Defendant acknowledged the claim on February 16, 2024. Record Document 29 at 5. During May and June of 2024 Plaintiff, at Defendant's request and as required under the terms of the policy, submitted a police report (in Spanish) obtained by Grindco covering the incident, a list of the missing equipment along with a timeline of when the equipment was last seen, and other documentation as required under the policy or requested by Defendant. Record Documents 29 at 6; and 31-1 at ¶24.

Given the facts it was presented, Defendant elected to refer the claim to its Special Investigative Unit, which investigated the claim for several months. Record Document 27-1 at 3. During this period Plaintiff and Q&N repeatedly made inquiries as to why the claim was taking so long and when the claim would be paid. Record Document 31-1 at 44. Finally, on September 26, 2024, Defendant sent Plaintiff a

"reservation of rights" letter acknowledging its ongoing investigation and stating, in pertinent part: "At this time, Navigators does not accept or deny coverage for the losses claimed." Record Document 27-2 at 73. At no point during the spring or summer of 2024 did Defendant request that Plaintiff appear for an examination under oath ("EUO") as part of its investigation; it was only in the reservation-of-rights letter at the end of September that it informed Plaintiff. "As per the Examination verbiage noted above, you will be contacted in the near future in order to schedule that examination under oath." Record Documents 27-2 at 83; and 29 at 6.

Counsel for Defendant contacted Plaintiff's counsel on October 17, 2024, eight months following Defendant's acceptance of Plaintiff's claim and approximately four months after Plaintiff delivered the documents and other evidence requested by Defendant, to schedule the EUO, Record Documents 27-1 at 4; 27-3; and 29 at 6-7, and the parties agreed to hold the EUO on November 8, 2024. Record Documents 27-1 at 4; and 29 at 6-7. After the parties agreed to that date, Plaintiff obtained new counsel and, at Plaintiff's request, the EUO was rescheduled for December 5, 2024. Record Documents 27-1 at 4; and 29 at 6-7. On December 3, 2024, Plaintiff again canceled the EUO, this time without any explanation, and it was rescheduled for December 19, 2024. Record Documents 27-1 at 4; and 29 at 6-7. On December 18, 2024, Plaintiff's counsel cancelled the scheduled EUO for the third time, advising Defendant's counsel that Plaintiff had filed this lawsuit the day prior. Record Documents 27-1 at 4; 29 at 6-7; and 31-1 at 65. That letter noted that "Hurricane Work, LLC fully intends to cooperate with the insurance company and the provisions

of the insurance contract and at the appropriate time will name a corporate representative to participate in the EUO." Record Document 31-1 at 65. But it also noted in the next paragraph: "One of the threshold issues in this case is whether coverage exists …. If the court determines that coverage exists, then the EUO can be conducted, in due course." *Id.*

The record does not reflect any further investigation of Plaintiff's policy claim following the filing of this lawsuit. In its complaint, Plaintiff seeks a declaratory judgment under federal and state law that Plaintiff has an insurable interest in the subject equipment, and penalties and attorneys' fees for Defendant's alleged bad faith conduct during the claims process. Record Document 1 at ¶¶30-46. Alternatively, if the Court finds there is no insurable interest, Plaintiff seeks a refund of all of its premiums paid for the policy. Record Document 1 at 13.

## LAW AND ANALYSIS

### A. Summary Judgment Standard.

The law pertaining to summary judgment is well settled. Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Quality Infusion Care, Inc. v. Health Care Serv. Corp.*, 628 F.3d 725, 728 (5th Cir. 2010). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the

nonmoving party. *Id.* "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED. R. CIV. P. 56(c)). The moving party need not support its motion with affidavits or other evidence, but to defeat a motion for summary judgment the non-movant must present evidence sufficient to establish the existence of each element of its claim as to which it will have the burden of proof at trial. *Id.* at 322.

## B. Analysis.

An insurance policy dispute is contractual. *Cadwallader v. Allstate Ins. Co.*, 2002-1637, p.3 (La. 06/27/03); 848 So. 2d 577, 580. Louisiana construes insurance policies by applying the general rules of contract interpretation set forth in the Louisiana Civil Code. *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994). The parties' intent as reflected by the words in the policy determines the extent of coverage, and such intent is determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. *Id.* (citing LA. CIV. CODE. ANN. art 2047). "An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is

6

reasonably contemplated by its term or so as to achieve an absurd conclusion." *Id.* (internal citations omitted). When the language is clear and unambiguous, it must be enforced as written. *Reynolds v. Select Properties, Ltd.*, 1993-1480, p.3 (La. 04/11/1994); 634 So. 2d 1180, 1183. *See also, Cadwallader*, 848 So. 2d at 580 ("Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms.").

The insurance policy at the core of this claim states:

**Suit Against Us** – No one may bring a legal action against "us" under this coverage unless:

a. all of the "terms" of this coverage have been complied with; and
b. the suit has been brought within two years after "you" first have knowledge of the loss.

Record Document 27-2 at 30.

The policy defines "we" and "us" as "the company providing the coverage." Record Document 27-2 at 18. It defines "terms" as "all provisions, limitations, exclusions, conditions, and definitions that apply." Record Document 27-2 at 19. "You" is defined as "the persons or organizations named as the insured in the declarations." Record Document 27-2 at 18. Accordingly, under the clear and unambiguous terms of the contract, the named insured, here Plaintiff, may not bring any legal action against the company issuing the insurance policy, here Defendant, unless Plaintiff has

complied with all of the provisions, limitations, exclusions, and conditions of the policy.

In the policy provisions pertaining to what must be done in case of a loss under the policy, the language reads:

4.    **Examination** – "You" must submit to examination under oath in matters connected with the loss as often as "we" reasonably request and give "us" sworn statements of the answers. If more than one person is examined, "we" have the right to examine and receive statements separately and not in the presence of others.

Record Document 27-2 at 25.

Thus, if the insurance company so requests, one of the terms of the policy that the insured must satisfy prior to filing any legal action against the insurance company over the loss at issue is to sit for an EUO as often as the insurance company reasonably requests. The language could not be more clear and unambiguous.

Plaintiff appears to have understood this, as its sole member Jack Singleton ("Mr. Singleton") agreed to sit for the EUO on three separate occasions prior to filing this lawsuit. Record Documents 27-1 at 4; and 29 at 6-7. All three of those scheduled examinations were cancelled by Mr. Singleton. *Id*. As justification for cancelling the first examination, Mr. Singleton cited his change of counsel. Record Document 27-3 at ¶6. Mr. Singleton gave no explanation for why he cancelled the second examination. Record Document 27-3 at ¶8. The third scheduled examination was cancelled because Plaintiff had initiated this legal action against Defendant the day before. Record Documents 27-3 at ¶9; and 31-1 at 65.

It is important to note three dispositive points. First, as noted above, Defendant's reservation-of-rights letter specifically stated that coverage under the

8

policy was not being denied, it just stated that the claim was being investigated, and that there was a question as to whether Plaintiff had an insurable interest in the equipment. It did not say that Plaintiff did not have such an interest. Record Document 27-2 at 73. It is entirely possible that, following Plaintiff's EUO and completion of Defendant's investigation, Plaintiff's claim may, in fact, be paid. Second, Plaintiff filed this litigation prior to sitting for the EUO, one of the required terms of the policy, thus violating the "Suit Against Us" provision to which Plaintiff agreed by executing the insurance contract. Finally, Plaintiff clearly stated that it would not sit for an EUO unless and until this Court ruled on its claim that it has an insurable interest in the subject equipment. Record Document 31-1 at 65. As Defendant noted in its Reply, that puts the cart firmly before the horse. Record Document 32 at 1. Unless and until Defendant denies Plaintiff's claim based upon the lack of an insurable interest, that issue is not ripe for this Court to consider. And until there is a denial of coverage, Plaintiff remains obligated to comply with the terms of the policy. *Assaf v. Allstate Indemnity Co.,* 2011 WL 3178551, at *7 (E.D. La. 2011):

> Further, as Allstate points out, it is only when an insurer denies coverage that an insured's duty to cooperate is eliminated. The evidence presently before the Court reveals that Allstate never denied coverage; no evidence has been presented to the Court to suggest otherwise. So, Plaintiff was still obligated to abide by the terms of the Policy, requiring sworn proof of loss and an E.U.O., if and when requested. (citing *Copelin v. State Farm, Ins.,* 2009 WL 361088, at *5 (E.D. La. 2009).

Moreover, as Defendant explains in detail in its Reply, Record Document 32 at 3, many questions remain to be answered in order for it to complete its investigation,

and Plaintiff's failure to complete the EUO while memories are still fresh creates significant prejudice to Defendant's ability to get answers to those questions. *See, e.g., Johnson v. Geovera Specialty Ins. Co.*, 657 Fed. Appx. 301, at *304-05 (5th Cir. 2016)(insureds refusal to sit for an EUO for over a year following the claim sufficiently prejudiced the insurer to warrant denial of benefits). Given all of the above, Plaintiff is in material breach of the insurance contract and Defendant has been significantly prejudiced thereby. Deciding whether to dismiss this prematurely-filed case thus becomes an easy call. The more difficult question is whether to dismiss with or without prejudice.

Courts routinely dismiss insurance policy claims with prejudice where the insured affirmatively refuses to cooperate with the insurance company or to sit for an EUO, and those dismissals are routinely affirmed by the Fifth Circuit. *See, e.g., LeBlanc v. Davis*, 223 So. 2d 862, 863-64 (La. 1969); *Lee v. United Fire & Casualty Co.*, 607 So. 2d 685, 688 (La. App. 4 Cir. 1992); *Mosadegh v. State Farm Fire & Cas. Co.*, 330 Fed. Appx. 65, 66 (5th Cir. 2009); *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. Appx. 162, 165-66 (5th Cir. 2012); *Kerr v. State Farm Fire & Cas. Co.*, 511 Fed. Appx. 306, 307 (5th Cir. 2013).

The situation differs, however, where the insured provides reasonable explanations for its failure to cooperate or sit for an EUO, and where the actions of the insurer protract the process. *See, e.g., McCartney v. Shelter Mutual Ins. Co.*, 2017-1398, pp. 6-7 (La, App. 1 Cir. 07/10/18); 255 So. 3d 1060, 1063-64 (counsel for plaintiffs postponed the EUO to review the file and the delay in requesting the proof of loss and

EUO "was due as much to the dilatory action of Shelter as the [plaintiffs]."); *Beasley v. Geovera Specialty Ins. Co.*, 2015 WL 2372328 (E.D. La. 2015)("There is no question that this case has been unduly delayed, but the fault does not rest solely with the Plaintiffs. Geovera failed to reschedule the cancelled EUO for a year, without explanation."); *Hayes v. Southern Fid. Ins. Co.*, 2013 WL 4012745, at *5 (E.D. La. 2013)("Dismissing Hayes' case with prejudice by granting SFIC's motion for summary judgment, and relieving SFIC of liability under the policy would be a draconian measure when Hayes had demonstrated a willingness to cooperate with SFIC to adjust the claim.")(dismissing the case without prejudice).

In this case, Plaintiff has never affirmatively refused to sit for an EUO, though its actions tend to show intentional delay.[2] It has otherwise cooperated with Defendant, and has indicated a willingness to continue to do so. And Defendant shares responsibility for the extended length of time between the initial claim and the instant dispute, waiting months after receiving the requested claim supporting documentation to request Mr. Singleton sit for the EUO, pushing Plaintiff into possible danger of peremption. Dismissing this case with prejudice and thereby

---

[2] Plaintiff does aver that Mr. Singleton, the sole member of the LLC that is Plaintiff, has no knowledge of the information Defendant is seeking and that others, *e.g.*, the representative of Grindco who filed the police report, would have more knowledge. Record Documents 31 at 9-11; and 31-1 at¶¶22, 29-30. Plaintiff's apparent intent to shield Mr. Singleton from the EUO is misplaced. The contract language does not grant Plaintiff or Mr. Singleton the power to choose the party required to sit for the EUO, that is solely within the purview of Defendant. As sole member of Plaintiff, Mr. Singleton is the only person Defendant can require to sit for the EUO; it cannot compel anyone else outside of the LLC to do so, and Mr. Singleton cannot refuse to do so without being in material breach of the contract. If the EUO proves to be a waste of time for all parties, that will be Defendant's issue. But under the terms of the contract language Mr. Singleton is required to sit for the EUO, while memories are still fresh, prior to Defendant determining whether there is coverage.

11

relieving Defendant from all responsibility under the policy would be truly a draconian measure.

At this point the record suggests the investigation remains open, albeit stalled because of this litigation. It is strongly recommended that Mr. Singleton sit for the EUO promptly after this ruling or risk any future legal action being promptly dismissed with prejudice for failure to comply with all policy requirements, and that Defendant promptly determine whether Plaintiff's claim is covered under the specific facts of the loss or risk a renewed and viable legal claim by Plaintiff. Once that coverage determination is made, the parties can decide how to proceed.

## <u>CONCLUSION</u>

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary Judgment, Record Document 27, is **GRANTED**. All of Plaintiff's federal and state law claims against Defendant in this matter are **DISMISSED WITHOUT PREJUDICE**.

**DONE AND SIGNED** in Shreveport, Louisiana, this 4th day of June, 2026.

**ALEXANDER C. VAN HOOK**
**UNITED STATES DISTRICT JUDGE**

12